UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

LARRY LENN MOORE, JR.,
ADC #108555                                                                 PLAINTIFF

V.                             3:15CV00370 JTR

FELICIA KING,
Food Service Coordinator                                                    DEFENDANT

# OPINION & ORDER[1]

Plaintiff Larry Lenn Moore, Jr. ("Moore") is a prisoner in the Arkansas Department of Correction. On November 17, 2015, he commenced this *pro se* § 1983 action alleging that Defendants Food Service Coordinator Felicia King ("King"), Jail Administrator Matt Hall ("Hall"), and Sheriff Marty Boyd ("Boyd") violated his constitutional rights while he was an inmate in the Craighead County Detention Center ("CCDC"). *Docs. 1 & 6.* By way of relief, Moore seeks $50,000 in unspecified damages. *Id.*

During screening mandated by 28 U.S.C. § 1915A, the Court: (1) dismissed, without prejudice, all of Moore's claims against Hall and Boyd; and (2) allowed Moore to proceed with his claim that King sexually harassed him in violation of the

---

[1] On May 15, 2017, the parties consented to proceed before a United States Magistrate Judge. *Doc. 41.*

Eighth Amendment.[2] *Docs. 8 & 14.* The Court has now appointed counsel to represent Moore and King, and set the case for a Non-Jury trial in Jonesboro, Arkansas on January 22, 2018. *Docs. 35 & 47.*

King has filed a Motion for Summary Judgment on the sexual harassment claim, along with a supporting Statement of Undisputed Facts and Brief. *Docs. 50 & 51.* Moore has filed a Response, a Brief in Support, and a Statement of Disputed Facts. *Docs. 52, 53, & 54.* King has filed a Reply. *Doc. 55.* Thus, the issues are fully joined and ripe for resolution.

## I. Relevant Facts

The facts,[3] viewed in the light most favorable to Moore,[4] are as follows:

1. In August of 2015, jail administrators assigned Moore to work in the CCDC kitchen as a cook, which Moore characterizes as a "beneficial trusty

---

[2] The parties *agree* that, "at all relevant times, Moore was an inmate" at the CCDC. *Doc. 54 at 1.* Thus, his sexual harassment falls under the Eighth Amendment, rather than the Fourteenth Amendment that applies to pretrial detainees. *See LeMaster v. Perdomo*, No. 05CV4088, 2005 WL 2372150 at *2 (W.D. Mo. Sept. 27, 2005) (unpublished opinion).

[3] Unless otherwise stated, the facts are taken from the Complaint, Amended Complaint, and Answer, all of which were filed *pro se. Docs. 1, 6, & 33.* Counsel for both parties has stipulated, pursuant to Fed. R. Civ. P. 56(c)(1)(A), that these pleadings may be "treated as verified declarations or affidavits" for summary judgment purposes. *Doc. 53 at 2.*

[4] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

position." *Doc. 6 at 3.*

2. Moore was supervised in the CCDC kitchen by King, who was the Food Service Coordinator. Her duties included preparing and serving meals, as well as "oversee[ing] all general kitchen operations." *Doc. 51, Ex. 2 at 2.* King was employed by Tiger Correctional Services, Inc., a private company that had an "exclusive" contractual agreement to provide food services to inmates at the CCDC. *Doc. 51, Ex. 1 at 1.*

3. While working in the CCDC kitchen, King "coerced" Moore into having a sexual relationship with her by giving him Xanax and threatening to fire him from his position as a cook. *Doc. 6 at 2-3.*

4. Moore admits that he "fell in love" with King and that "things started getting serious." *Doc. 1 at 4.*

5. However, sometime in November of 2015, Moore decided to "distance himself" from King because he "was afraid of getting in trouble." *Id.*

6. On or about November 5, 2015, Moore ended his sexual relationship with King. *Doc. 6 at 2.* Later that day, Moore "was terminated by King from his position in the Jail's kitchen." *Doc. 54 at 2.* Moore immediately told Officer Peaster and Jail Administrator Hall that King fired him because he ended his sexual relationship with her and that she had given him Xanax to entice him into having sexual relations. *Doc. 6.* Officer Peaster gave Moore a drug test, which confirmed

3

that he had recently taken Xanax. *Id.* Hall then began a "C.I.D." investigation, which ultimately resulted in King's termination. *Id.*

## II. Discussion

King argues that she is entitled to summary judgment because: (1) she was not acting under color of state law; and (2) the facts, viewed in the light most favorable to Moore, do not establish a constitutional violation.[5] *Doc. 51*. For the reasons explained below, both of those arguments are without merit.

**A.     Color of State Law**

A § 1983 action can only be filed against a state actor, such as an employee of a state or local government, or a person acting under "color of state law." *See* 42 U.S.C. § 1983; *Scheeler v. City of St. Cloud, Minn.,* 402 F.3d 826, 830 (8th Cir. 2005). The parties agree that King was not a "state actor," because she was not

---

[5] King *strongly denies* having a sexual relationship with Moore. King alleges that, when she was in the CCDC stock room on an unspecified date, Moore approached her from behind and put his arms around her waist. *Doc. 33 at 1*. King claims she "immediately let Moore know that behavior was not accepted and would not be tolerated." *Id.* King alleges that, sometime later (presumably on November 5, 2015), she was sitting in her office when she "heard a sound" and saw Moore "standing inside the bathroom with his penis outside his pants." *Id.* King "immediately turn[ed] facing my computer and finished my work." *Id.* After the inmates left the kitchen, King "called an officer and told him that I no longer wanted inmate Moore in the kitchen, that *he was fired*, and to send a replacement." *Id.* (emphasis added).

Thus, the parties *hotly dispute* the relevant facts giving rise to the alleged constitutional violation. Under King's version of the facts, she is entitled to summary judgment because Moore's constitutional rights were not violated. However, Moore disputes those facts and offers a different version of events that, *if* accepted as true, would entitle him to prevail on his § 1983 sexual harassment claim. Obviously, to resolve this constitutional question, the Court must make numerous findings of fact, something it is prohibited from doing under Rule 56 of the Federal Rules of Civil Procedure.

4

employed by Craighead County. However, they disagree as to whether King was acting under "color of state law."

A private party acts under color of state law, and thus may be sued under § 1983, when she "performs a function traditionally exclusively reserved for the state." *Reasonover v. St. Louis Cnty., Mo.*, 447 F.3d 569, 584 (8th Cir. 2006) (quoting *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 352 (1974)). In *West v. Atkins,* 487 U.S. 42, 56 (1988), the Court concluded that a private physician acted under color of state law when he contractually agreed to provide medical care to state prisoners. The Court supported its decision by noting that:

> The State bore an *affirmative obligation* to provide adequate medical care to West; the State *delegated that function* to respondent Atkins; and respondent *voluntarily assumed* that obligation by contract.

*Id.* (emphasis added).

As in *West*, it is undisputed that the CCDC had an "affirmative obligation" to provide food services to the detainees and prisoners in its custody. The parties agree that CCDC "delegated" that function to Tiger Correctional Services, Inc., which was contractually obligated to provide food services at that facility. *Doc. 51, Ex. 1.* King was employed by Tiger Correctional Services, Inc., as its Food Service Coordinator at the CCDC. In that position, King had the authority to "oversee general kitchen operations." *Doc. 51, Ex. 2 at 2.* By acting in this capacity, King was performing a "function traditionally exclusively reserved for the states." *Reasonover,* 447 F.3d at

5

584. Thus, as a matter of law, King was acting under color of state law in overseeing the general operations of the CCDC kitchen.

King argues that she was not acting under color of state law because she had no custodial or supervisory control over Moore. That argument was squarely rejected by the Court in *West:* "*custodial and supervisory functions are irrelevant to the assessment [of] whether the particular action challenged was performed under color of state law.*"[6] *West,* 487 U.S. at 53 (emphasis added).

Trial courts in the Eighth Circuit have also consistently "found that contracted food service providers at correctional facilities are government actors for purposes of § 1983 liability because the food service provider has assumed the state's constitutional obligation to provide a nutritionally adequate diet to inmates."[7]

---

[6] In *West,* the private doctor did *not* have any custodial or supervisory control over the prisoner he treated. Nevertheless, the Court concluded that he was acting under color of state law because he was carrying out the State's affirmative obligation to provide medical care to inmates in its custody.

[7] King cites *Strope v. McKune*, No. 04-3204, 2009 WL 504699 (D. Kan. Feb. 27, 2009) (unpublished decision), to support her argument that she was not acting under color of state law. However, in *Strope,* the Court dismissed a prisoner's § 1983 claims against a food service director because he "had *no personal involvement* in any of the incidents or decisions *Strope* targets in this action." *Id. at *2* (emphasis added).

King also cites two cases holding that supervisors in prison work release programs were not acting under color of state law when they allegedly terminated prisoners from their discretionary work release jobs in mining and manufacturing plants. *See King v. Hilgert,* No. 4:13CV3061, 2015 WL 1119451 (D. Neb. Mar. 11, 2015) (unpublished opinion); *Harper v. Bellew,* No. 4:10CV04063, 2010 WL 6609928 (W.D. Ark. Sept. 20, 2010) (unpublished opinion). However, both of those cases are clearly distinguishable because mining and manufacturing are *not* functions "traditionally exclusively reserved for the states," and the state does *not* have an "affirmative obligation" to provide work to prisoners.

*Jenkins v. Stutsman Cnty. Corr. Ctr. Com'r Chairman,* No. 3:13CV00067, 2015 WL 1458158 at *6 (D.N.D. Mar. 30, 2015) (unpublished opinion) (holding that an employee of a private company that contractually agreed to provide food services to a county jail was acting under color of state law); *Whitney v. Morse*, No. 5:14CV5028, 2014 WL 7339140 (W.D. Ark. Dec. 23, 2014) (unpublished opinion) (same); *Mozden v. Helder,* No. 5:13CV05160, 2014 WL 2986711 (W.D. Ark. July 2, 2014) (unpublished opinion) (same).

Because King clearly was "acting under color of state law" while she worked in the CCDC kitchen, her first ground for summary judgment is without merit.

**B.     Constitutional Violation**

A claim for relief under § 1983 must be premised on a deprivation of right secured by the federal Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Gatlin ex rel. Estate of Gatlin v. Green*, 362 F.3d 1089, 1093 (8th Cir. 2004). King argues that Moore's § 1983 claim fails because he did not have a constitutional right to work in the CCDC kitchen. *See Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002); *Wishon v. Gammon,* 978 F.3d 446, 450 (8th Cir. 1992).

King's argument misconstrues the constitutional basis for Moore's claim. As explained during the screening process, Moore is alleging that King violated his Eighth Amendment right to be free from sexual harassment. In *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997), the Court recognized that:

> [B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the "unnecessary and wanton infliction of pain." To prevail on a constitutional claim of sexual harassment, an inmate must therefore prove, as an objective matter, that the alleged abuse or harassment caused "pain" and, as a subjective matter, that the officer in questions acted with a sufficiently culpable state of mind.

*Id.* (internal citations omitted).

In *Freitas,* a male prisoner ("Mr. Freitas") engaged in a sexual relationship with a female guard ("Ms. Howard"), who was his work supervisor. *Id.* After several months, Mr. Freitas ended the relationship when he learned that Ms. Howard was seeing other men, and he reported her conduct to the warden. Mr. Freitas then filed a § 1983 claim for damages, alleging Ms. Howard violated his Eighth Amendment rights by sexually harassing him. The Eighth Circuit affirmed the dismissal of Mr. Freitas's sexual harassment claim because he failed to prove that his sexual relationship with Ms. Howard was involuntary:

> The record contains no evidence, other than Mr. Freitas's *unsubstantiated assertions*, supporting his claim that he succumbed to Ms. Howard's advances because she was his boss and he feared the possible negative consequences of reporting her actions. In short, there is not much evidence suggesting that Ms. Howard put Mr. Freitas in a "no-win" situation, and, more to the point, there is ample evidence supporting the trial court's finding that their relationship was *consensual in the freest sense of the word*. Without deciding at what point unwelcome sexual advances become serious enough to constitute "pain," we hold that, at the very least, *welcome and voluntary sexual interactions, no matter how inappropriate, cannot as matter of law constitute "pain" as contemplated by the Eighth Amendment.*

*Id. at 1339* (emphasis added).[8]

Unlike in *Freitas*, Moore specifically alleges that King *coerced* him into a nonconsensual sexual relationship by giving him Xanax and threatening to terminate his "beneficial trusty position" as a cook in the CCDC kitchen. Depending on how the Court finds the facts, Moore's allegations of coercion may or may not be "unsubstantiated."[9] Moore contends that King fired him from his position as a cook on the same day he allegedly ended his relationship with her. He also contends that

---

[8] In recent years, many federal courts have questioned whether, due to the "enormous power imbalance," an inmate can voluntarily consent to engaging in sexual activity with a jail or prison employee. *See, e.g., Wood v. Beauclair,* 692 F.3d 1041, 1046-48 (9th Cir. 2012); *Graham v. Sheriff of Logan Cnty.,* 741 F.3d 1118, 1124-26 (10th Cir. 2013); *Caskey v. S. Dakota State Penn.,* No. 4:14CV04010, 2015 WL 7345763 at *21-22 (D.S.D. Sept. 29, 2015) (unpublished opinion). Similarly, many states have criminalized any sexual contact between inmates and prison staff, regardless of consent. *See, e.g.* Ark. Code. Ann. § 5-14-127(a)(2) (defining sexual assault in the fourth degree, which is a class D felony, as when a person "employed" by the ADC or a county jail "engages in sexual contact" with a prisoner or detainee); I.C.A. § 709.16 (providing that it is an "aggravated misdemeanor" in Iowa, which is where the *Freitas* case originated, for a prison "officer, employee, contractor, vendor, volunteer, or agent" to "engage in a sex act" with a prisoner).

While some federal courts and state legislatures have determined that prisoners and detainees cannot voluntarily consent to sexual activity with their captors, *Freitas* remains binding precedent as to § 1983 sexual harassment claims raised in the Eighth Circuit. *See Cotton-Schrichte v. Peate*, No. 07-4052, 2010 WL 5423737 at *2 (W.D. Mo. Dec. 23, 2010) (unpublished opinion) (holding that, although the Missouri criminal law provided that all sexual acts between prisoners and prison staff were non-consensual, a prisoner still must prove non-consent in order to prevail on a § 1983 sexual harassment claim). Thus, Moore cannot prevail on his sexual harassment claim if the evidence at trial establishes that he engaged in "welcome and voluntary sexual interactions" with King. *See Freitas*, 103 F.3d. at 1339.

[9] King relies on *Muhammad* and *LeMaster,* two cases in which it was *undisputed* that the sexual relationships between inmates and prison workers were consensual. *See Muhammad v. Busboom*, No. 4:15CV3136, 2017 WL 788340 (D. Neb. Jan. 23, 2017) (unpublished decision); *LeMaster v. Perdomo*, No. 05CV4088, 2005 WL 2372150 (W.D. Mo. Sept. 27, 2005) (unpublished decision). After hearing all the hotly disputed evidence in this case, the Court may or may not make findings that bring this case within the holdings in *Muhammad* and *LeMaster*.

9

he tested positive for Xanax, which King allegedly provided to entice him into engaging in sex with her. *If* the Court finds those facts to be true, it could establish a violation of Moore's Eighth Amendment right to be free from sexual harassment. *See Rogers v. City of Little Rock*, 152 F.3d 790, 797 (8th Cir. 1998) (holding, in a § 1983 action, that consent to sexual acts is involuntary if obtained by "mental coercion"); *Caskey v. S.D. State Penitentiary*, No. 4:14CV004010, 2015 WL 7345763 (D.S.D. Sept. 29, 2015) (unpublished opinion) (denying summary judgment where there was evidence that a prison guard coerced a prisoner into having sex by threatening to issue him a major disciplinary for not being at his work assignment and accessing an adult website); *Morgan v. Glen,* No. 6:12CV006098, 2014 WL 470745 (W.D. Ark. Feb. 6, 2014) (unpublished decision) (denying summary judgment where there was evidence that jailers used food and cigarettes to coerce prisoners into performing sexual acts); *Scott v. Mo. Dept. of Probation & Parole,* No. 1:07CV00082, 2009 WL 1811734 (E.D. Mo. June 25, 2009) (unpublished opinion) (denying summary judgment where there was evidence that a probation officer coerced a parolee into engaging in sexual acts by giving him alcohol and drugs, offering to "make his probation easier," and threatening to revoke his probation).

Finally, King argues that Moore's sexual harassment claim fails, as a matter of law, because she did not terminate Moore from working in the CCDC kitchen,

something she lacked the authority to do. However, in her Answer, King unequivocally states that: "*I fired him* [Moore]." *Doc. 33 at 1*. King also states that, on or about November 7, 2015, she told Officer Peaster that: "I no longer wanted inmate Moore in the kitchen, *that he was fired,* and to send a replacement." *Id.* (emphasis added).

King's argument is also legally flawed. Moore is raising an Eighth Amendment *sexual harassment claim, not a wrongful termination claim*. Thus, the relevant issue is whether King used the *potential loss* of Moore's preferential job assignment as a *coercive tool* to force him to engage in sex with her.

Because almost all of the relevant facts surrounding Moore's constitutional claim are in dispute, this case must proceed to trial.[10]

### III. Conclusion

IT IS THEREFORE ORDERED THAT King's Motion for Summary Judgment *(Doc. 50)* is DENIED.

Dated this 8th day of December, 2017.

_____
UNITED STATES MAGISTRATE JUDGE

---

[10] At trial, Moore will have the burden of proving, by a preponderance of the evidence, that his sexual relationship with King was *not* consensual in order to satisfy the objective element of his sexual harassment claim. *See Freitas,* 109 F.3d at 1339; *Muhammad*, 2017 WL 788340 at *4; *LeMaster,* 2005 WL 2372150 at *3.

11